**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Burt Feuerstein and
Janet Shalwitz,

          Plaintiffs,

          vs.

The Home Depot, U.S.A., Inc., *et al.*,

          Defendants.

2:12-cv-1062 JWS

ORDER AND OPINION

[Re: Motion at docket 58]

## I.  MOTION PRESENTED

At docket 58 defendants The Home Depot, U.S.A., Inc. ("HD") and Tricam

Industries, Inc. ("TI") (collectively "Defendants") move pursuant to Federal Rule of Civil

Procedure 37(a)(1) for an order compelling plaintiff Burt Feuerstein ("Burt") to appear

for a further deposition and to provide certain deposition testimony, as well as for

sanctions and costs associated with bringing the motion.  Burt opposes at docket 59.

Defendants reply at docket 61.  A statement of personal consultation is at docket 57.

Oral argument was not requested and would not be helpful to the court.

## II.  BACKGROUND

Burt and his co-plaintiff, Janet Shalwitz (collectively "Plaintiffs"), filed suit against Defendants and two other entities on May 21, 2012.  Jurisdiction is based on 28 U.S.C. § 1332.  According to his amended complaint, Burt was injured on May 8, 2011, when a ladder slipped from beneath him.  Plaintiffs allege the ladder was manufactured by TI and sold by HD.  They allege it slipped while set up on decking manufactured by defendant Trex Company, Inc., which was also sold by HD.  Plaintiffs plead claims under Arizona law for strict liability, violation of statutory obligations, breach of an implied warranty, negligence, failure to warn, punitive damages, and Janet Shalwitz's loss of consortium.  According to Plaintiffs, at the time of Burt's fall he was using the ladder in accordance with applicable instructions.  The gravamen of all Plaintiffs' claims is that the ladder slipped due to a defective design of the ladder's feet, defective warnings or instructions, and a defective design of the surface of the Trex decking.  Defendants' answers deny that the claims advanced by Plaintiffs have merit.

## III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 37(a)(1) authorizes a party to move to compel discovery after conferring in good faith with the opposing party in an attempt to avoid motion practice.  Rule 37 (a)(5)(A) provides generally that if the motion is granted, the court must order the opposing party to pay the reasonable expenses of making the motion.  Rule 37 (a)(5)(C) provides that where the motion is denied the court must award reasonable expenses to the party opposing the motion.

Discovery rules are liberally construed to effect the just, speedy, and inexpensive resolution of litigation.[1]  Discovery's scope is broad.  The Federal Rules of Civil Procedure give parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."[2]  Furthermore, such "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[3]  Professor Wright instructs that "[t]he rules . . . permit the broadest scope of discovery and leave it to the enlightened discretion of the district court to decide what restrictions may be necessary in a particular case."[4]  The Ninth Circuit observes these principles and has emphasized that "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth."[5]  However, discovery is not unfettered.  All discovery requests are subject to limitations against discovery which is unreasonably cumulative, seeks information which the requesting party had ample opportunity to obtain in other litigation, or imposes a burden or expense which outweighs its likely benefit under the circumstances of the particular case.[6]

---

[1] 8 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice and Procedure,* § 2001 at 44 (2d ed. 1994) ("*Wright*").

[2] Fed. R. Civ. P. 26(b)(1).

[3] *Id.*

[4] *Wright,* § 2036 at 488.

[5] *See Epstein v. MCA, Inc.,* 54 F.3d 1422, 1423 (9th Cir. 1995) (citation omitted).

[6] Fed. R. Civ. P. 26(b)(1) imposes these limitations, which are more fully described in Fed. R. Civ. P. 26 (b)(2)(C).

3

Rule 30 governs the conduct of depositions.  It provides in pertinent part that one "may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion [to terminate the deposition] pursuant to Rule 30(d)(3)."[7]

## IV.  DISCUSSION

**A.  Answering Particular Questions**

Burt was deposed on May 6, 2013.  Defendants contend that their efforts to obtain relevant testimony at the deposition were thwarted by the improper objections made and instructions given to Burt by Plaintiffs' counsel.  Defendants assert that Plaintiffs' lawyer's conduct should be evaluated in light of the defense contentions that if the ladder slipped, this happened because Burt "set up the ladder at too shallow an angle," and he failed "to follow the instructions and warnings on the ladder."[8]  These contentions must have been known to Plaintiffs' lawyer, because they were set out in HD's interrogatory answers dated March 25, 2013, over a month prior to Burt's deposition.[9]

Defendants contend, and the deposition transcript supports the assertion, that at his deposition Burt had a very limited memory of facts that would be pertinent to warnings on the ladder and Defendants' contentions about the manner in which Burt

---

[7]Fed. R. Civ. P. 30(c)(2).

[8]Doc. 58 at p. 3.

[9]Doc. 58-4.

4

was using the ladder.[10]  Seeking more details than Burt could remember, Defendants

posed questions relating to communications he might have had with other persons prior

to the deposition.  It is some of those questions which are the subject of the motion.

The first question Defendants contend Burt should have answered but did not,

because Plaintiffs' lawyer instructed Burt not to respond, came after Burt's answers

established that he did not know what instructions were lacking on the ladder.  The

question was, "[H]ave you ever had any conversation with . . .  anyone who you

considered to have expertise in the area which has suggested to you that some label or

warning is missing from the accident ladder which would have prevented your accident

from taking place."[11]  Plaintiffs' lawyer interjected before Burt could answer: "I'm going

to instruct the witness not to answer that question.  It's not designed to elicit any

discoverable information."[12]   Finding out whether there has been such a conversation

and then with whom might very well yield information that would fall within the broad

scope of discovery contemplated by the federal rules.  The objection was not well

taken.  In their opposition Plaintiffs assert that the work-product doctrine might support

Burt's refusal to answer.  However, such an objection clearly is not applicable to the

question actually asked, which did not ask for any document or tangible thing, a request

which would have been foreclosed by Fed. R. Civ. P. 26 (b)(3)(A) governing trial

---

[10]Deposition of Burt Feuerstein, doc. 58-1 at deposition pp. 10-12, 18-21, and 28-29.

[11]*Id.* at deposition p. 12, ll. 19-25.

[12]*Id.* at deposition p. 13, ll. 1-4.

5

preparation materials.[13]  Moreover, the work product doctrine was not mentioned in the

objection at the deposition.  Burt will be required to answer the question posed and any

logical follow-up questions that do not require disclosure of privileged information, such

as something disclosed in a conversation in which his attorney participated, or the

content of something protected by Rule 26 (b)(3)(A).

Next, Defendants assert that Burt should have answered the following inquiry:

"Mr. Feuerstein, have you ever had any conversations with anyone who claims to have

expertise in the area of ladder labeling or anyone who has suggested to you that he is

going to offer testimony in this case regarding this claim of yours that there was some

deficiency in the labels and the warnings and instructions on the ladder?"[14]  He did not

answer because his lawyer interjected the following: "And I'm going to instruct

Mr. Feuerstein not to answer a question as to discussions with parties that are not here.

And if in fact there are experts that we intend to utilize in this action, you'll be able to

depose them pursuant to the rules and ask them any questions with regard to their

opinions . . . . " Again, the question falls within the broad scope of permissible

discovery, and the question posed did not itself seek any privileged communication.

Because this preliminary question was not answered, it is impossible to know if follow-

up questions might run afoul of any privilege.  Burt will be required to answer this

question and any logical follow-up questions that do not run afoul of any privilege or

Rule 26 (b)(3)(A).

---

[13]*See* Fed. R. Civ. P. 26 Advisory Committee Notes (discussing the 1970 Amendment as it relates to Rule 26(b)(3)).

[14]Doc. 58-1 at deposition p. 14, ll. 16-22.

The third matter relates to a follow-up question posed after Burt responded to a question about marks left by the ladder saying, "[m]y attorney told me there were marks."[15]  The follow-up question asked if Burt's attorney had been present during an examination of the scene by someone with engineering expertise.  The objection at the deposition was based on the attorney-client privilege.  That objection came at least one question too soon.  Burt's lawyer did not raise a relevance objection, but the court cannot understand how this question falls within the broad scope of discovery.  Rather, it relates only to potential activity by Burt's lawyer in preparing for the litigation.  The court declines to order Burt to answer a question which falls outside the scope of discovery, despite the failure of his lawyer to raise a relevance objection.  Burt will not be required to answer this question.

The next two questions which Defendants say Burt should be required to answer asked whether he ever observed a retained consultant or his attorney perform any tests of the ladder at the scene of the accident, and whether he ever saw any consultant performing any test of the ladder on the Trex surface.  These questions are within the scope of discovery and do not in themselves violate any privilege or the provisions of Rule 26 (b)(3)(A).  Burt will be required to answer them, as well as any follow-up questions that do not invade any area of privilege or fall within the prohibition on trial preparation materials in Rule 26 (b)(3)(A).

Finally, Defendants contend that Burt should be required to answer the question whether he ever gave his lawyer specific measurements with reference to the location

---

[15]*Id.* at deposition p. 14, l. 23.

of the ladder at the time of the accident.  The court agrees with Plaintiffs that this inquiry

seeks to learn the content of a communication Burt may have had with his lawyer, and

therefore, requiring an answer would violate the attorney-client privilege.  Burt will not

be required to answer this question.

**B.  Sanctions**

As an alternative to requiring Burt to appear at a resumed deposition to answer

certain questions, Defendants ask the court to strike the allegations that the ladder's

design or manufacture caused Burt's fall and to strike the allegations that a deficiency

in the ladder's label or instructions caused the fall.  These alternative sanctions would

have the effect of terminating Plaintiffs' claims against HD.

Before imposing a claim dispositive sanction, this court must consider five

criteria: the public interest in prompt conclusion of litigation; need to manage the court's

docket; risk of prejudice to the party asking for the sanction; policy favoring disposition

of disputes on their merits; and suitability of less drastic sanctions.[16]  Here, neither of

the first two considerations come into play, for this case may still be timely resolved.

The risk of prejudice to HD is virtually non-existent, for it can obtain the information it

seeks at a resumed deposition.  The policy favoring resolution on the merits weighs

heavily against imposing the alternative sanctions.  Moreover, imposing the sanctions

sought by HD might leave TI at greater risk as the only remaining defendant, yet TI has

no responsibility for the actions by Plaintiffs' counsel.  Finally, the lesser sanction of

---

[16]*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).

ordering the resumption of the deposition so that certain questions may be answered is a more proportional, and indeed entirely adequate, sanction.

## C. Expenses

The remaining issue is whether to require one party to pay the other its reasonable expenses incurred in the motion practice at hand.  Where, as here, the motion is being granted in part and denied in part, Rule 37 (a)(5)(C) gives the court discretion after giving the parties an opportunity to be heard to apportion the expenses. The court directs counsel to confer in an effort to reach an agreement on this issue.  If they cannot do so, then either side may move for an award of motion expenses within 14 days from the date of this order.  The court assumes that before either party makes such a motion careful consideration will be given to the question whether the game is worth the candle.

## V.  CONCLUSION

The motion at docket 58 is **GRANTED** in part and **DENIED** in part as follows. Plaintiffs shall make Burt Feuerstein available for a resumed deposition at a mutually agreeable time and place within 21 days from the date of this order.  At the deposition, Defendants may pose only those questions which are authorized by this order.

Any motion to recover reasonable motion practice expenses must be made within 14 days from the date of this order.

DATED this 23rd day of August 2013.

_____
/S/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

9