UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Burt Feuerstein and Janet Shalwitz,     )
                                        )
         Plaintiffs,                    )     2:12-cv-01062 JWS
                                        )
     vs.                                )     ORDER AND OPINION
                                        )
The Home Depot, U.S.A., Inc.,           )
Gorilla Ladder Company, Tricam          )
Industries, Inc., Trex Company, Inc.,   )
and A.B.C. Corp.,                       )
                                        )     [Re: Motions at Docket 81]
         Defendants.                    )
                                        )
_____)

## I.  MOTION PRESENTED

At docket 81 defendants The Home Depot, U.S.A., Inc. ("Home Depot") and Tricam Industries, Inc. ("Tricam") (collectively "Defendants") move for an order granting summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56.  Their memorandum in support is at docket 83, and their statement of undisputed facts is at docket 82.  Plaintiffs Burt Feuerstein ("Feuerstein") and Janet Shalwitz (collectively "Plaintiffs") oppose at docket 100, with their countering statement of facts at docket 101.  Defendants reply at docket 112.  Oral argument was requested, but it would not provide additional assistance to the court.

-1-

## II.  BACKGROUND

Plaintiffs filed suit against Defendants and two other entities on May 21, 2012. Jurisdiction is based on 28 U.S.C. § 1332.  Feuerstein was injured on May 8, 2011, when his ladder, a Tricam AL-22-2 ("AL-22"), slipped out underneath him.  The AL-22 is an articulating ladder manufactured by Tricam and sold by Home Depot.  An articulating ladder is a three-part ladder, with an inner assembly and two flared outer assemblies. The inner assembly is hinged to permit the ladder to be used as an A-frame or a straight ladder.  The outer assemblies can be positioned on various rungs of the inner assembly to make the ladder longer or shorter, or they can be removed to form part of a scaffold.  Feuerstein was using the ladder in its straight configuration on the day of the accident.  He had the ladder set up on his deck so that he could reach the overhanging roof.  Feuerstein's decking is manufactured by defendant Trex Company, Inc. ("Trex"), which was also sold by Home Depot.

According to Plaintiffs, at the time of Feuerstein's fall he was using the AL-22 in accordance with applicable instructions.  The gravamen of Plaintiffs' claims are that the ladder slipped out underneath him due to a defective design of the ladder's feet and a defective design of the surface of the Trex decking.  Plaintiffs bring eight causes of action, primarily raising state law claims under Arizona law.  Their first cause of action is a strict liability claim against Tricam and Home Depot for design defects in the AL-22. Their second cause of action is another strict liability claim for design defects, as well as manufacturing defects, but is brought against Trex and Home Depot for design defects in the Trex decking.  Their fourth cause of action is for breach of an implied warranty against all defendants in relation to their respective products.  Their fifth cause of action is against all defendants for negligence in designing their respective products and inadequately warning consumers about the dangers of such products.  Plaintiffs' sixth cause of action is against all defendants for failure to warn consumers about the dangers of their products.  Plaintiffs also bring claims against all defendants for punitive damages and Janet Shalwitz's loss of consortium.  Plaintiffs raise one federal claim as

-2-

1   well; a claim for violation of the Magnuson-Moss Warranty Act, which is the third cause

2   of action in Plaintiffs' complaint.

3       Tricam and Home Depot brought this motion for summary judgment, requesting

4   summary judgment in their favor "on all of plaintiffs' counts."  A review of the motion,

5   however, suggests that the motion only addresses Plaintiffs' claims as they relate to the

6   AL-22.  Trex has not filed a motion for summary judgment, and Home Depot has not set

7   forth an argument as to why summary judgment is appropriate as to Plaintiffs' claims

8   related to the decking.  Thus, the court's order only addresses Plaintiffs' claims as they

9   relate to the AL-22.

10      In their reply brief, Ladder Defendants ask the court to exclude one of Plaintiffs'

11  exhibits[1] and present a detailed argument as to why the exhibit is inadmissible.  Such a

12  request should be filed in a separate motion.  For purposes of the summary judgment

13  motion at hand, the court notes that the exhibit was not considered because it was

14  irrelevant or not necessary to support the court's ruling.

15                  **III.  STANDARD OF REVIEW**

16      Summary judgment is appropriate where "there is no genuine dispute as to any

17  material fact and the movant is entitled to judgment as a matter of law."[2]  The

18  materiality requirement ensures that "only disputes over facts that might affect the

19  outcome of the suit under the governing law will properly preclude the entry of summary

20  judgment."[3]  Ultimately, "summary judgment will not lie if the . . . evidence is such that a

21  reasonable jury could return a verdict for the nonmoving party."[4]  However, summary

22  judgment is mandated under Rule 56(c) "against a party who fails to make a showing

23

24  _____

25      [1]The exhibit at issue is an animation prepared Plaintiffs that reconstructs the accident.

26      [2]Fed. R. Civ. P. 56(a).

27      [3]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

28      [4]*Id.*

                                    -3-

1  sufficient to establish the existence of an element essential to that party's case, and on

2  which that party will bear the burden of proof at trial."[5]

3      The moving party has the burden of showing that there is no genuine dispute as

4  to any material fact.[6]  Where the nonmoving party will bear the burden of proof at trial

5  on a dispositive issue, the moving party need not present evidence to show that

6  summary judgment is warranted; it need only point out the lack of any genuine dispute

7  as to material fact.[7]  Once the moving party has met this burden, the nonmoving party

8  must set forth evidence of specific facts showing the existence of a genuine issue for

9  trial.[8]  All evidence presented by the non-movant must be believed for purposes of

10  summary judgment, and all justifiable inferences must be drawn in favor of the

11  non-movant.[9]  However, the non-moving party may not rest upon mere allegations or

12  denials, but must show that there is sufficient evidence supporting the claimed factual

13  dispute to require a fact-finder to resolve the parties' differing versions of the truth at

14  trial.[10]

15                    **IV.  DISCUSSION**

16  **A. State of the Art Defense**

17      Defendants argue that summary judgment in their favor is required because it is

18  uncontested that the AL-22's design and warnings were "state of the art."  Under

19  Arizona law, in any products liability action a defendant is not liable if:

20      The defect in the product is alleged to result from inadequate design or
       fabrication, and if the plans or designs for the product or the methods and

21

22  _____

23  [5]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

24  [6]*Id.* at 323.

25  [7]*Id.* at 323-25.

26  [8]*Anderson,* 477 U.S. at 248-49.

27  [9]*Id.* at 255.

28  [10]*Id.* at 248-49.

                    -4-

1
2

techniques of manufacturing, inspecting, testing and labeling the product
conformed with the state of the art at the time the product was first sold by
the defendant.[11]

3   The defendant bears the burden of proving this affirmative defense.  Defendants argue

4   that it is uncontested that the AL-22 went through pre-purchase safety testing and

5   complied with standard A14.2, the governing American National Standards Institute

6   ("ANSI") safety standard for portable metal ladders.  Based on its compliance with the

7   applicable safety standard, Defendants argue that the AL-22 is "state of the art" and

8   therefore they cannot be sued for product liability.

9       It is undisputed that A14.2 of the ANSI standards applies to the AL-22 ladder and

10  that the ladder underwent pre-purchase testing pursuant to A14.2.  It is also undisputed

11  that the ladder passed this safety standard.[12]  However, even though the ladder

12  satisfied the applicable safety standard, Defendants fail to cite a case indicating that

13  compliance with ANSI safety standards renders a product "state of the art" as a matter

14  of law.  Under Arizona law, the governing law in this diversity dispute, state of the art is

15  defined as "the technical, mechanical and scientific knowledge of manufacturing,

16  designing, testing or labeling the same or similar products that was in existence and

17  reasonably feasible for use at the time of manufacture."[13]  This definition does not

18  include any mention of meeting minimum safety standards.  Indeed, state of the art is

19  not coextensive with industry custom: "Custom refers to what was being done in the

20  industry; state of the art refers to what feasibly could have been done."[14] Defendants do

21  not provide evidence regarding whether the AL-22 provided the best and most feasible

22

23      [11]A.R.S. §12-683(1).

24      [12]Plaintiffs argue that this is a minimum safety standard and only addresses the safety of
25  ladders set up on plywood and does not demonstrate that the ladder is safe to use on material
    other than plywood but do not dispute that the AL-22 passed the minimum standard.
26
27      [13]A.R.S. § 12-681(10).

28      [14]*Gosewisch v. Am. Honda Motor Co., Inc.*, 737 P.2d 365, 370 (Ariz. Ct. App. 1985),
    *vacated in part by*, 737 P.2d 376 (Ariz. 1987), *superceded by statute on other grounds*.

1  design for articulating ladders at the time of its manufacture or whether the AL-22's

2  warnings and labels were the best and most feasible option at the time.[15]  They have

3  failed to introduce evidence of experimentation and research conducted prior to

4  manufacturing the AL-22.[16]  Thus, the court cannot conclude that the AL-22 was state

5  of the art as a matter of law at the time of its manufacture.

6  **B. Design Defect**

7      **1. Strict Liability**

8        In order to establish a prima facie case of strict products liability, a plaintiff must

9  show that the product is defective and unreasonably dangerous; the defect existed

10  when it left the defendant's control; and the defective condition is the proximate cause

11  of the injuries.[17]  Plaintiffs allege in their first cause of action that the AL-22 was

12  defective because the anti-slip pads on the ladder's feet failed to contact the supporting

13  surface or that they contacted the supporting surface in improper and ineffective ways.

14  Defendants assert that summary judgment in their favor is appropriate on this claim

15  because Plaintiffs fail to present evidence to show that the AL-22 had an unreasonably

16  dangerous design defect as alleged.

17        Under Arizona law, two tests may be used when determining whether a product

18  has an unreasonably dangerous defective condition: the consumer expectation test and

19  the risk/benefit analysis test.  Under the consumer expectation test, the fact-finder

20  determines whether the product "failed to perform as safely as an ordinary consumer

21

22

23

---

24     [15]*See id.* (noting that evidence of infeasibility of testing and designing alternatives is

25  appropriate evidence of state of the art defense).

26     [16]*See id.* (noting that evidence of thoroughness of experimentation and research prior to
manufacture is also appropriate evidence for state of the art defense).

27

28     [17]*Dietz v. Waller*, 685 P.2d 744, 747 (Ariz. 1984) (internal quotations and emphasis
omitted).

1    would expect when used in an intended or reasonable manner."[18]  Under the

2    risk/benefit analysis test, the fact-finder determines whether "in light of the relevant

3    factors . . . , the benefits of the challenged design do not outweigh the risk of danger

4    inherent in [the] design."[19]  The relevant factors a fact-finder may consider are:

> (1) The usefulness and desirability of the product, (2) the availability of other and safer products to meet the same need, (3) the likelihood of injury and its probable seriousness, (4) the obviousness of the danger, (5) common knowledge and normal public expectation of the danger (particularly for established products), (6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings), and (7) the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive.[20]

10   In design defect cases, "the consumer expectation test has limited utility" because

11   generally a consumer will not have an idea about how safely the product could have

12   been made.[21]  But this does not mean that the consumer must have an expectation

13   about the design specifics of a product in order to apply the consumer expectation test.

14   Rather, the consumer expectation test applies when an ordinary customer through use

15   of a product develops "an expectation regarding the performance safety of the

16   product."[22]  "[W]hen application of the consumer expectation test is unfeasible or

17   uncertain . . . courts additionally or alternatively employ the risk/benefit analysis to

18   determine wether a design is defective and unreasonably dangerous."[23]

19        While this is a design defect case, the court nonetheless concludes that the

20   application of the consumer test is not unfeasible or uncertain here.  Plaintiffs allege

---

[18]*Dart v. Wiebe Mfg., Inc.*, 709 P.2d 876, 878-79 (Ariz. 1985) (quoting *Barker v. Lull Eng'g*, 573 P.2d 443, 446 (Cal. 1978)).

[19]*Id.* (quoting *Barker*, 573 P.2d at 446).

[20]*Id.* (internal quotations omitted).

[21]*Golonka v. Gen. Motors Corp.*, 65 P.3d 956, 962 (Ariz. Ct. App. 2003).

[22]*Brethauer v. Gen.l Motors Corp.*, 211 P.3d 1176, 1183 (Ariz. Ct. App. 2009).

[23]*Golonka*, 65 P.3d at 962.

1  that the anti-slip pads failed to contact the Trex decking properly or effectively.  The use

2  of an extension ladder and how its pivoting feet should rest or how they should perform

3  on decking material in normal conditions is a matter of common experience through

4  which ordinary consumers form reasonable safety expectations. "An extension ladder is

5  not so complex or arcane as to be beyond the grasp of an ordinary user."[24]

6        Applying the consumer expectations test to Plaintiffs' design defect claim related

7  to the AL-22,[25] the court concludes that Plaintiffs have introduced at least the minimum

8  amount of evidence to proceed to a jury.  Indeed, the consumer expectations test

9  requires only a modest threshold in order to survive summary judgment.[26]  Feuerstein's

10 deposition testimony states that he set up the ladder as instructed and that it

11 nonetheless slipped out from underneath him.  Plaintiffs also presented expert

12 testimony that points out some safety issues with the ladder's feet.  Defendants have

13 filed motions in limine to exclude the testimony of Plaintiffs' experts, Jay Preston and

14 Herbert Weller.  In a separate order, the court has excluded some of their testimony but

15 not all of it; the experts' observations regarding the placement of the ladder's feet when

16 set up at the proper angle have not been excluded.  Regardless, even without the

17 expert testimony, Plaintiffs' claim survives because expert testimony is not needed to

18

19

20

21
22        [24]*Massok v. Keller Indust., Inc.*, 147 Fed. Appx. 651, 659 (9th Cir. 2005) (applying California law).

23
24        [25]The Plaintiffs also raise a claim for design defect against Trex decking.  In that claim the Plaintiffs claim that the decking offered ineffective slip resistence to support a ladder.  This motion for summary judgment was not brought by Trex and thus does not involve that separate
25 design defect claim.  The court makes no determination on whether the consumer expectation test would apply to that claim.

26
27        [26]*See Campbell v. Gen. Motors Corp.*, 649 P.2d 224, 233 (Cal. 1982) (concluding that a plaintiff can reach the jury on the issue of design defect under the consumer expectations tests based on the plaintiff's own testimony regarding her use of the product, the circumstances of
28 the accident, and evidence of the "objective features of the product" relevant to its safety).

1   survive summary judgment on a strict liability claim.[27]   Thus, viewing all evidence and

2   drawing all inferences in favor of Plaintiffs, there is enough evidence on the record for a

3   reasonable juror to conclude that the AL-22 failed to perform as safely as an ordinary

4   consumer would expect and that Feuerstein was using the ladder in an intended or

5   reasonably foreseeable manner.

6        **2. Negligence**

7        Plaintiffs' negligence cause of action also relates in part to the design of the AL-

8   22.  Plaintiffs allege that Defendants were negligent in designing the AL-22 because

9   they failed to design it to prevent a slip out when placed on Trex decking.  "In order to

10  succeed on a negligent design claim, a plaintiff must prove that the manufacturer acted

11  unreasonably at the time of design or manufacture in light of the foreseeable risk of

12  injury from use of the product."[28]  In determining whether a manufacturer acted

13  unreasonably, the fact-finder considers the same risk/benefit analysis factors used to

14  determine strict liability.[29]  However, there is a difference in the application of these

15  factors.  Unlike a strict liability claim where the central focus is "the quality of the

16  product," the central focus of a negligence claim inquiry is "the conduct of the

17  manufacturer."[30]  In other words, in determining a negligent design claim, the fact-finder

18  looks at "whether the conduct of the defendant was reasonable in view of the

19  foreseeable risk of injury."[31]  A negligence claim based on inadequate design is more

20  onerous than a strict liability claim for design defect because the plaintiff must prove

21

22       [27] *See Dietz*, 685 P.2d at 747 ("[p]laintiffs . . . must be permitted to rely upon
23  circumstantial evidence alone in strict liability cases."); *see also Long v. TRW Vehicle Safety
    Systems, Inc.*, 796 F. Supp. 2d 1005, 1010 (D. Ariz. 2011) ("No expert testimony is necessary
24  to establish a design defect under the consumer expectation test . . . .").

25       [28] *Golonka,* 65 P.3d at 962.

26       [29] *Id.*

27       [30] *Dart*, 709 P.2d at 880.

28       [31] *Id.*

-9-

1   defendant's specific acts of negligence rather than just the existence of a product's
2   defect.[32]

3         Here, Plaintiffs do not point to any evidence regarding Defendants' *actions* in
4   relation to the design process.  The only facts related to Defendants' design is the fact
5   that the AL-22 was tested for compliance with the applicable safety standard—ANSI
6   A14.2—and passed the test.  While compliance with industry standards is not
7   determinative of the issue, it is relevant.[33]  Plaintiffs point to no evidence to suggest that
8   designing a product to meet these standards would be unreasonable or that
9   Defendants reasonably should have conducted tests on Trex decking.  There is nothing
10  to establish what a reasonable manufacturer should have done differently in the design
11  process.  As noted above, evidence of defect is not enough to support a negligence
12  claim; there must be evidence of unreasonable conduct on the part of the defendant.
13  Thus, there is nothing in the record from which a juror could conclude that Defendants
14  failed to take reasonable precautions in designing a safe product or otherwise failed to
15  act "as a reasonably prudent manufacturer would have under the circumstances."[34]

16  **C. Failure to Warn**

17        **1.Strict Liability**

18        Plaintiffs allege that the defendants in this case failed to label their respective
19  products with reasonable warnings about the dangers of their products.[35]  A strict
20  liability failure-to-warn claim requires the plaintiff to prove "that the defendant did not

---

22      [32]*Vineyard v. Empire Mach. Co., Inc.*, 581 P.2d 1152, 1155 (Ariz. Ct. App. 1978).

23      [33]*Rossell v. Volkswagen of Am.*, 709 P.2d 517, 523-24 (Ariz. 1985); *Am. Smelting &*
24  *Refining Co. v. Wusich*, 375 P.2d 364, 367 (Ariz. 1962) (evidence of custom or practice is
     admissible to demonstrate due care was taken but does not define the required standard of
25  care).

26      [34]*Barker*, 573 P.2d 443 (Cal. 1978).

27      [35]Given that this motion was brought by Tricam and Home Depot in relation to the AL-
28  22, the order will only address the failure-to-warn claim as it applies to the AL-22 and not Trex
     decking.

1  adequately warn of a particular risk that was known or knowable in light of the generally

2  recognized and prevailing best scientific . . . knowledge available at the time of

3  manufacture and distribution."[36]  Unlike a negligent failure-to-warn claim, strict liability is

4  not concerned with the reasonableness of the defendant's failure to warn, but the

5  conduct of the manufacturer is nonetheless relevant to the analysis as the giving of a

6  warning cannot be evaluated without some reference to the actions of the

7  manufacturer.[37]  The court must still consider what was foreseeable given the prevailing

8  knowledge at the time of manufacture.[38]  In determining what was foreseeable, a seller

9  is charged "'with knowledge of what reasonable testing would reveal.'"[39]

10       The record is devoid of any evidence from which a jury could conclude that

11  Defendants "did not adequately warn of a [particular] risk that was *known or knowable*

12  in light of the generally recognized and prevailing best scientific ... knowledge available

13  at the time of manufacture."[40]  Plaintiffs' expert testimony regarding the deficiency of the

14  AL-22's slip resistance based on that expert's tests has been ruled inadmissible.  There

15  is no other information to suggest that there were additional safety tests Defendants

16  should have conducted to test the ladder on various decking surfaces.  That is to say,

17  there is no evidence on the record to suggest that there was some information known to

18  Defendants that would trigger more specific testing of the AL-22, in addition to the

19  generally accepted ANSI safety test, which was conducted and which the AL-22 passed

20  before sale.

21

22

23       [36]*Powers v. Taser Intern, Inc.*, 174 P.3d 777, 783 (Ariz. Ct. App. 2007) (quoting

24  *Anderson v. Owens-Corning Fiberglas Corp.*, 810 P.2d 549, 558 (Cal. 1991)).

25       [37]*Id.*

26       [38]*Id.*

27       [39]*Id.* at 784 (quoting Restatement (Third) of Torts: Prod. Liab. Ss 2 cmt. M (1998)).

28       [40]*Id.* at 783 (emphasis added).

-11-

1    Even if Plaintiffs have demonstrated sufficient evidence to show that Defendants

2    possessed some information to trigger more specific testing about the use of the AL-22

3    on Trex decking to adequately warn of the alleged dangers, they do not present

4    evidence to show that Feuerstein would have heeded that warning.[41]  While Feuerstein

5    is entitled to the heeding presumption,[42] Defendants point to Feuerstein's deposition

6    testimony where he states that he does not know if a specific warning would have

7    changed his use of the AL-22, does not know how the warnings could have been better,

8    and could not say if inadequate warnings caused his accident.  This evidence would

9    permit a reasonable juror to conclude that Feuerstein would not have heeded a specific

10   warning about using the ladder on decking material.[43]  Plaintiffs have not pointed to any

11   countering evidence to create a genuine issue of fact as to whether Feuerstein would

12   have considered a warning regarding the use of the AL-22 on Trex decking.

13   Accordingly, the court concludes that no reasonable juror could find that Feuerstein's

14   fall was caused by the allegedly inadequate warnings.

15       **2. Negligence**

16       Plaintiffs' negligence cause of action also raises the issue of Defendant's failure

17   to warn.  In a negligence-based failure-to-warn case, the focus is more on the

18   reasonableness of the manufacturer's failure to warn.  Plaintiffs must "prove that a

19   manufacturer or distributor did not warn of a particular risk for reasons which fell below

20   the acceptable standard of care, *i.e.*, what a reasonably prudent manufacturer would

21

22   [41]*See Gosewisch v. Am. Honda Motor Co., Inc.*, 737 P.2d 376, 379 (Ariz. 1987)
     (requiring proof that the injured party would have heeded a proper warning in order to
23   demonstrate the requisite causation), *superceded by statute on other grounds*.

24   [42]*See Golonka,* 65 P.3d at 969 (holding that a heeding presumption— which is "a
     rebuttable presumption used in a strict liability information defect case to allow the fact-finder to
25   presume that the person injured by product use would have heeded an adequate warning, if
     given— is viable under Arizona law).
26

27   [43]*Id.* at 971-72 (holding that once a manufacturer presents some evidence from which a
     reasonable juror could conclude that the injured party would not have heeding an adequate
28   warning, the presumption drops out as if it had never existed).

1  have known and warned about."[44]  Plaintiffs have not put forth evidence to survive a
2  strict liability claim based on a failure-to-warn theory, and for similar reasons they
3  cannot establish a negligence claim based on a failure-to-warn theory.  There is nothing
4  in the record to show what a reasonably prudent manufacturer would have known
5  regarding the safety of using a ladder like the AL-22 on Trex decking.

6  **D. Implied Warranty**

7          Under Arizona law, "the theory of liability under implied warranty has been
8  merged into the doctrine of strict liability in tort, so that it is on this latter doctrine that
9  the plaintiff's claim must stand or fall."[45]  Plaintiffs have brought a strict liability claim for
10 the AL-22's alleged design defect.  Any allegations related to the AL-22's implied
11 warranty are covered in the strict liability claim.  Thus, Plaintiff's separate implied
12 warranty claim is redundant and unnecessary.

13 **E. Express Warranty**

14         Defendants request that the court grant summary judgment in its favor as to
15 Plaintiffs' express warranty cause of action.  Both parties briefed whether summary
16 judgment on such a cause of action would be appropriate.  However, the court
17 concludes that Plaintiffs' amended complaint fails to raise a state law claim for breach
18 of an express warranty, and so any discussion of such a claim is irrelevant.

19         To the extent Plaintiffs would seek to amend the complaint at this late stage and
20 assuming such a request would be entertained, the court concludes that such a claim
21 would not survive summary judgment because there is no evidence of Defendants'
22 breach of an express warranty.  Feuerstein testified during his deposition that a Home
23 Depot sales associate told him that the AL-22 was a "good ladder."  Under Arizona law,
24 however, a seller's statement of opinion is not an express warranty.[46]  Feuerstein's

---

[44]*Powers*, 174 P.3d at 783 (quoting *Anderson*, 810 P.2d at 558-59).

[45]*Scheller v. Wilson Certified Foods, Inc.*, 559 P.2d 1074, 1076 (Ariz. Ct. App. 1977).

[46]*Downs v. Shouse*, 501 P.2d 401 (Ariz. Ct. App. 1972).

-13-

1   affidavit states that the AL-22 came with a "Limited Lifetime Warranty" that expressly

2   promised him a ladder free of defects.  However, as Defendants point out, the warranty

3   only pertains to defects in "workmanship or materials."  Plaintiffs only allege defects in

4   the ladder's design and warnings.  Also, the warranty states that Tricam will provide

5   repair or replacement for ladders demonstrated to have a defect in workmanship or

6   materials.  There is no evidence that Feuerstein attempted to contact Tricam for repair

7   or replacement.

8   **F. Magnuson-Moss Warranty Act**

9        Plaintiffs' third cause of action alleges that defendant Tricam violated the

10  Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2310(d), by failing to comply

11  with the written and implied warranties that accompanied the AL-22.[47]  Defendants

12  argue that summary judgment in their favor is warranted because Plaintiffs do not have

13  evidence to show Tricam was afforded a reasonable opportunity to cure the alleged

14  defects before Plaintiffs brought their MMWA claim.  Defendants are correct.  Plaintiffs'

15  allegation that Tricam breached the terms of the AL-22's warranties fails as a matter of

16  law based on § 2310(e), which requires the manufacturer be given an opportunity to

17  cure before it can be held liable under § 2310(d).[48]  There is no evidence that Plaintiffs

18  complied with § 2310(e) before filing suit.  Furthermore, as noted by Defendants, the

19  MMWA does not provide recovery for personal injury damages arising out of a breach

20  of a warranty.[49]

21

22

23        [47]Again, this claim is also brought against Trex, but Trex has not moved for summary judgment and so the order only address the claim as it relates to Defendants.

24        [48]15 U.S.C. § 2310(e) states as follows: "No action . . . maybe brought under subsection
25  (d) for failure to comply with any obligation under any written or implied warranty . . . unless the
    person obligated under the warranty or service contract is afforded a reasonable opportunity to
26  cure such failure to comply."

27        [49]*Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1065 (5th Cir. 1984) (concluding that
    personal injury claims based only on a breach of warranty are not cognizable under the
28  MMWA).

-14-

1       Plaintiffs' MMWA claim, however, also alleges that Tricam failed to comply with

2   the substantive obligations under the MMWA itself, which is also an actionable claim

3   under §2310(d).[50]  That is, they allege that Tricam attempted to avoid any implied

4   warranty through their written warranty, which would be a violation of 15 U.S.C.

5   § 2308.[51]  Defendants do not mention this allegation or request summary judgment on

6   this issue.  Indeed, personal injury claims based on the breach of the substantive

7   provisions of § 2308 have been ruled cognizable by other courts.[52]

8   ## V.  CONCLUSION

9       Based on the preceding discussion, Defendants' motion for summary judgment

10  at docket 81 is **GRANTED IN PART AND DENIED IN PART**.  Defendants Tricam and

11  Home Depot are entitled to judgment as to Plaintiffs' negligence claim as it relates to

12  the AL-22 (under both the design negligence and failure to warn negligence theories),

13  their Failure-to-Warn claim as it relates to the AL-22, and the Magnuson-Moss Warranty

14  Act claim to the extent it alleges a breach of the AL-22's warranties.  Plaintiffs' implied

15  warranty claim is dismissed as redundant.  The remaining claims survive.

16      DATED this 6th day of June 2014.

17

18                      /s/  JOHN W. SEDWICK
                    SENIOR UNITED STATES DISTRICT JUDGE

19

20

21  [50]15 U.S.C. § 2310(d) ("[A] consumer who id damaged by the failure of a . . . warrantor

22  to comply with any obligation under this chapter . . . may bring suit for damages and other legal
   and equitable relief.").

23

24  [51]15 U.S.C. § 2308(a) states as follows: "No supplier may disclaim or modify (except as
   provided in subsection (b) of this section) any implied warranty to a consumer with respect to

25  such consumer product if (1) such supplier makes any written warranty to the consumer with
   respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such

26  supplier enters into a service contract with the consumer which applies to such consumer
   product."

27

28  [52]*See Boelens*,748 F.2d at 1065-66; *Gorman v. Saf-T-Mate, Inc.*, 513 F. Supp. 1028,
   1035 (N.D. Ind. 1981).