**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Burt Feuerstein and Janet Shalwitz, ) | |
| Plaintiffs, ) | 2:12-cv-01062 JWS |
| vs. ) | ORDER AND OPINION |
| The Home Depot, U.S.A., Inc., ) Gorilla Ladder Company, Tricam ) Industries, Inc., Trex Company, Inc., ) and A.B.C. Corp., ) | [Re: Motions at Dockets 84, 86 124, and 126] |
| Defendants. ) | |

## I. MOTIONS PRESENTED

At docket 84, Defendants The Home Depot, U.S.A., Inc. ("Home Depot") and Tricam Industries, Inc. ("Tricam"; collectively "Ladder Defendants") filed a motion *in limine* seeking to exclude the testimony of Herbert Weller ("Weller"), expert witness for Plaintiffs Burt Feuerstein ("Feuerstein") and Janet Shalwitz (collectively "Plaintiffs"). The memorandum and documents in support are at docket 85. Ladder Defendants filed a second motion *in limine* at docket 86 seeking to exclude the testimony of Plaintiffs' second expert witness, Jay Preston ("Preston"). The memorandum in support and supporting documents are at docket 87. Plaintiffs' filed oppositions at dockets 95

and 96. Ladder Defendants filed replies at dockets 106 and 107. Oral argument was requested, but would not be of additional assistance to the court.

At docket 124, Defendant Trex Company, Inc. ("Trex") filed a motion in *limine* to exclude the testimony of Preston, challenging Preston's opinions about the Trex decking. Plaintiffs' response is at docket 129.[1] No reply was filed. At docket 126, Trex filed a motion *in limine* to exclude Weller's testimony, challenging his opinions related to Trex decking. Plaintiffs' response is at docket 128. No reply was filed.

## II. BACKGROUND

Plaintiffs filed suit against Ladder Defendants, Trex, and other entities on May 21, 2012. Jurisdiction is based on 28 U.S.C. § 1332. Feuerstein was injured on May 8, 2011, when his ladder, a Tricam AL-22-2 ("AL-22"), slipped out underneath him. The AL-22 is an articulating ladder manufactured by Tricam and sold by Home Depot. An articulating ladder is a three-part ladder, with an inner assembly and two flared outer assemblies. The inner assembly is hinged to permit the ladder to be used as an A-frame or a straight ladder. The outer assemblies can be positioned on various rungs of the inner assembly to make the ladder longer or shorter, or they can be removed to form part of a scaffold. Feuerstein was using the ladder in its straight configuration on the day of the accident. He had the ladder set up on his deck so that he could reach the overhanging roof. Feuerstein's decking is manufactured by Trex, which was also sold by Home Depot.

Plaintiffs plead claims under Arizona law for strict liability, breach of an implied warranty, negligence, failure to warn, punitive damages, and Janet Shalwitz's loss of consortium, as well as a claim for violation of the Magnuson-Moss Warranty Act. According to Plaintiffs, Feuerstein was using the AL-22 in accordance with applicable instructions at the time of his accident. The gravamen of all Plaintiffs' claims are that

---

[1] The caption in docket 129 indicates that it relates to Trex's motion to exclude Weller's testimony, but upon review of the document it is clear that docket 129 addresses Preston's testimony Thus, the court presumes the caption was an error.

the ladder slipped out underneath him due to a defective design of the ladder's feet and a defective design of the surface of the Trex decking. Plaintiffs retained Preston and Weller to investigate the accident. Preston considered the AL-22's set up on the day of the accident and performed tests related to Trex decking. Weller considered the AL-22's set up on the day of the accident and performed tests related to the ladder's ability to slip on the Trex decking.

### III.  DISCUSSION

The court has broad discretion when ruling on motions *in limine*.[2] Ladder Defendants and Trex request that the court exclude Plaintiffs' two experts pursuant to Rule 702 of the Federal Rules of Evidence. Rule 702 permits opinion testimony by an expert as long as the witness is qualified and the witness's opinion is relevant and reliable.[3] "[A] district court's inquiry into admissibility is a flexible one."[4] The purpose of the district court's inquiry is "to screen the jury from unreliable nonsense opinions" and not to "exclude opinions merely because they are impeachable."[5] The district court functions as a "gatekeeper, not a fact finder."[6]

Under Rule 702, a witness may be "qualified as an expert by knowledge, skill, experience, training, or education."[7] "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable

---

[2] *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980) ("A district court is vested with broad discretion to make . . . evidentiary rulings conducive to the conduct of a fair and orderly trial.").

[3] Fed. R. Evid. 702.

[4] *City of Pomona v. SQM N. Am. Corp.*, Nos. 12-55147, 12-55193, 2014 WL 1724505, at *3 (9th Cir. May 2, 2014).

[5] *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).

[6] *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (internal quotations omitted).

[7] Fed. R. Evid. 702.

if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."[8]  The district court's task in screening a scientific opinion for reliability was addressed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[9] and its progeny.  "The court must assess the expert's reasoning or methodology, using appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance."[10] However, these factors are "not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case."[11]  When non-scientific testimony is at issue, the *"Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable . . . ."[12]  The reliability of such non-scientific testimony depends more "on *the knowledge and experience* of the expert, rather than the methodology or theory behind it."[13]

"It is the proponent of the expert who has the burden of proving admissibility."[14] Admissibility must be established by preponderance of the evidence.[15]  The party presenting the expert has the burden to show that the expert's findings are based on "sound science" and that the expert's methodology is capable of independent validation.[16]

---

[8] *Primiano*, 598 F.3d at 565 (internal quotations omitted).

[9] 509 U.S. 579 (1993).

[10] *Pomona*, 2014 WL 1724505, at *3.

[11] *Primiano*, 598 F.3d at 564 (internal quotations omitted).

[12] *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (quoting *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2005)).

[13] *Id.* (quoting *Hankey*, 299 F.3d at 1069) (emphasis in original).

[14] *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

[15] *Daubert*, 509 U.S. at 592 n. 10.

[16] *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995).

**A. Expert testimony of Herbert Weller**

Ladder Defendants assert that Plaintiffs' expert, Herbert Weller, is not qualified to give expert opinions about Feuerstein's accident. They argue that Weller does not have the necessary experience, training, knowledge, or education in ladder design, particularly articulating ladder design, or ladder accident reconstruction. They argue that Weller's qualifications are based only on self study and nominal safety certifications and memberships.

Upon review of Weller's affidavit and curriculum vitae, the court concludes that Weller is qualified to testify about ladder safety in general. In addition to his experience using ladders in his prior profession as a professional painter, Weller has taken an Occupational Safety and Health Administration ("OSHA") stairways and ladder safety course and a self-study correspondence course through the American Society of Safety Engineers. He has been certified as a safety specialist through the World Safety Organization. He has been asked to provide input in a few ladder safety studies and has participated in at least one workshop involving ladder safety standards. Based on these qualifications, the court concludes that he possesses more knowledge in ladder safety than a layperson and can testify as an expert in general ladder safety.

The court recognizes that Ladder Defendants have raised legitimate questions as to the depth and quality of Weller's experience in ladder safety standards and ladder testing. Indeed, while Weller's affidavit states that he has "determined the causation of hundreds of injuries sustained by members of the public,"[17] he does not inform the court as to how many of these investigations involved ladder accidents. He purports to be fully versed on the applicable ladder standards—the American National Standards Institute ("ANSI") safety standards for ladders—but does not specify the number of safety tests he has conducted. Moreover, he does not cite to a single case where he was allowed to testify at trial as an expert in ladder accident reconstruction and safety

---

[17]Doc. 95-3 at ¶ 9.

standards. While these deficiencies have given the court pause, they reflect more on the weight a fact-finder should give his testimony, rather than admissibility. Thus, at this juncture, the court concludes that Weller is at least minimally qualified to discuss the ladder accident at issue here.

However, the court concludes that Weller is not qualified to offer opinions about the deficiencies in the labels and warnings related to the products in this case. Plaintiffs, who have the burden to prove admissibility, provide no evidence that Weller has had any training or education related to ladder warnings or instructions. Weller's declaration, however, suggests that he has *experience* in designing ladder warnings and labels. Specifically, he states that he designed a ladder safety manual that is used by Wal-Mart, and in support he refers to an exhibit that he attached to his declaration. The exhibit, however, is only a questionnaire that Wal-Mart returned to Weller after he mailed it to Wal-Mart regarding his "proposed feasibility study on the issue of ladder safety." He does not provide the manual or any other evidence to demonstrate that he was involved in writing a ladder safety manual that Wal-Mart uses. Weller also claims that he designed a ladder label, referred to as "Marking #5," which is the label that describes an acceptable method for approximating a safe ladder angle. Ladder Defendants' expert rebuts this claim:

> [Weller] claims that he designed the label describing the procedure for setting the ladder at the proper angle. This is incorrect. The label was first published in the 1990 version of ANSI A14.2, long before [Weller] had any involvement with ANSI A14. The label is based upon the "fireman's rule," which is the method by which firemen have set their ladders. This rule goes back at least 50 years. . . . At no time has [Weller] had any input into the [ANSI A14] Labeling Task Force.[18]

Plaintiffs do not refute the defense expert's statement and do not provide evidence to show that Weller has been involved in the creation of any ladder warnings. Based on Plaintiffs' failure to meet their burden regarding Weller's experience with product labels and warnings, the court concludes that Weller is not qualified to provide expert

---

[18]Doc. 85-7 at p. 9.

testimony regarding effective ladder warnings or the deficiencies of the warnings related to the products at issue in this case.

Ladder Defendants also argues that even if Weller is qualified to testify regarding general ladder safety and ladder accidents, his opinions regarding the cause of Feuerstein's accident should be excluded because they are not reliable. Weller's report offers a variety of opinions related to Feuerstein's ladder accident, such as the appropriateness of the height, angle, and set up of the ladder at the time of the accident. These opinions are in the realm of his general ladder knowledge and expertise and are based on Feuerstein's testimony about how he set up the ladder on the day of the accident.[19]

Weller's report also discusses tests he designed and ran to ascertain whether the ladder improperly slipped out underneath Feuerstein. Ladder Defendants assert that Weller's technique to test his theory and the results derived therefrom are not reliable, and any opinion derived from such tests should be excluded. Weller's slip tests are scientific in nature in that they were conducted to determine the amount of force required to cause the accident ladder to slip on Trex decking. The court therefore will consider the applicable *Daubert* factors. The applicable factors include whether the technique Weller used is generally accepted as the proper method for measuring a ladder's resistance to slippage and whether the techniques he applied can be recreated and retested.

---

[19]Feuerstein stated in his deposition that he believes the ladder was about two or three rungs above the roofline at the time of the accident and that he used the appropriate method for setting the ladder angle on the day of the accident. Doc. 85-4 at pp. 8, 9 (Feuerstein's deposition pp. 18, 23-24). Ladder Defendants argue that these are disputed facts and Weller cannot base his opinions on Feuerstein's testimony. They rely primarily on photographs that Feuerstein had taken after the accident. Feuerstein disputes the significance of these photos, asserting that they were not meant to represent the exact placement and angle of the ladder at the time of the accident but were merely meant to be an approximation of where the ladder was set up at the time of the accident. Doc. 85-4 at p. 8 (Feuerstein's deposition pp. 18-20).

Weller admits that he modified the generally accepted slip test set forth in the applicable safety standard—ANSI A 14.2—when he tested how the ladder performs on Trex decking.  Modification of the generally accepted test is not necessarily problematic given that the generally accepted test requires tests on plywood, not Trex decking, but Weller does not set forth sufficient evidence to show that all of his modifications and his specific test design are standard in ladder accident investigation.  While Weller states that his investigative methods are generally approved and peer reviewed by the Consumer Product Safety Commission ("CPSC") and OSHA, Ladder Defendants' expert states that his "review of the CPSC and OSHA investigative manuals does not indicate that they are peer reviewed . . . [and] [t]he investigation done by [Weller] is not found in either of these guides."[20]  Plaintiffs, who have the burden to demonstrate admissibility, do not provide evidence in support of Weller's contention that his investigative methods and his test modifications are generally acceptable and in accordance with the accident investigation protocol set forth by CPSC and OSHA.

More importantly, while Weller recorded his investigation and methodology so that it could be subjected to review, his results cannot be independently verified given significant errors that call into question the soundness of his methodology.[21]  Ladder Defendants' expert points out that Weller failed to measure the exact angle at which the ladder was placed during his tests; did not have the scale vertical when he weighed the test weights; did not hang the scale by its hook as designed but rather held the scale by its body; held the gauge incorrectly during his force measurements; and improperly applied the pullout force at the bottom of the ladder by pulling not just horizontally as required by the accepted testing standard but also upward.  These errors mean that the weight on the ladder during Weller's tests and the force he applied are actually

---

[20]Doc. 85-7 at p. 9.

[21]Weller recorded his investigation and the video was submitted into the record as Exhibit C-16 to Plaintiffs' opposition (doc. 95-3, doc. 98).  It is also submitted into the record at doc. 100-4 at p. 58 (Weller's declaration, Exhibit 16).

unknown, and therefore, the results are not accurate and cannot be verified through retesting.

Plaintiffs fail to put forth any evidence to counter Ladder Defendants' expert or otherwise argue why these errors do not fundamentally affect the results. Plaintiffs argue instead that these issues should go to weight and not admissibility. Indeed, an imperfect execution of a otherwise solid and accepted methodology is sufficient to pass muster under *Daubert*.[22] That is, minor errors in reasoning or execution should not render an expert's testimony inadmissible.[23] But here, the court concludes that Weller's methodology has not been proven to be generally accepted, and the errors are significant enough to make his entire analysis unreliable. Therefore, the court concludes that any opinions Weller formed on the basis of his tests are inadmissible.

Trex also asks the court to exclude Weller's testimony as it relates to Trex decking. Although Weller was not designated as an expert in slip resistance, Trex notes that Weller's report contains one opinion regarding Trex decking. In his report, Weller concludes that Trex decking has a manufacturing defect because it has no warning labels regarding the use of a ladder on its surface. Given that the court has concluded Weller is not qualified to testify regarding labels and warnings, his testimony about the type of warning that should come with Trex decking is therefore inadmissible. Furthermore, the court has already determined, in relation to the Ladder Defendants' motion, that any opinion Weller formed based on his slip tests is inadmissible given the reliability problems noted above.

**B. Expert testimony of Jay Preston**

Ladder Defendants assert that Plaintiffs' other expert, Jay Preston, is not qualified to give expert testimony about Feuerstein's ladder accident. They argue that he does not have the necessary experience, skill, training, knowledge, or education in

---

[22] *Pomona*, 2014 WL 1724505, at * 7.

[23] *Id.*

ladder design, particularly articulating ladder design, to opine about the ladder's defects or the causation of Feuerstein's ladder fall. The court disagrees. Preston's declaration and curriculum vitae demonstrate that he is a qualified ladder safety specialist with experience in ladder accident reconstruction. He has a degree in safety from the University of Southern California, and his course work involved an emphasis on products liability analysis and prevention. He has investigated hundreds of ladder accidents. He is licenced by the state of California as a Registered Professional Safety Engineer and teaches courses in safety engineering and ladder safety at the University of Southern California. Given this education and experience, Preston is qualified to give expert testimony regarding the safe and proper use of ladders. He may testify as to the proper set up of a ladder and any problems he observed with Feuerstein's AL-22. He can testify as to what he observed when he set up Feuerstein's ladder and discuss how a ladder accident can occur when a ladder "walks" due to the fact that all of the ladder's feet are not solidly on the ground. Such an opinion is based on Preston's knowledge and expertise in ladder safety.

      Trex does not dispute Preston's qualifications to provide expert testimony on the relevant issues. Trex instead argues that Preston's expert opinions about the safety and slip resistance of Trex decking are based on unreliable data. To gather his data about the slip resistance of Feuerstein's Trex decking, Preston used an English XL Variable Incidence Tribometer ("VIT"). The VIT "measures . . . Slip Resistance factor when the test surface is lubricated and static coefficient of friction . . . when the surface is dry."[24] Trex does not dispute that the VIT is generally used to test slip resistance of a material. Trex does not set forth evidence to show that Preston's use of the VIT was improper or deviated from the accepted protocols. Indeed, Trex does not dispute that Preston is a certified VIT operator and that he was trained to use the device by its inventor. Trex generally questions why Preston used a paper towel to wipe the surface

---

[24]Doc. 124-1 at p. 7.

1 of the deck before testing, stating that it is not part of the testing method and that it
2 could have contaminated the surface of the decking, but it does not cite to any expert
3 evidence or testing manuals to support this claim.  In response, Plaintiffs filed a copy of
4 the VIT's user guide which instructs a user to wipe the VIT's test foot with a paper
5 towel, which suggests paper towels will not affect the results.

6       Plaintiffs have met their burden to prove the admissibility of Preston's testimony
7 regarding Trex decking.  The VIT Preston used to form his opinions about the slip
8 resistance of Trex decking is generally accepted as the proper device to use for slip
9 resistance testing.  Trex does not provide any evidence to show that Preston made
10 significant errors or modifications that call into question the soundness of Preston's
11 methodology.  Moreover, given that Preston has the requisite training and knowledge
12 regarding how to use the VIT, the court has no reason to question his methodology.
13 Any concern about the variability of Preston's results and how Preston interpreted those
14 results is a question of weight and not admissibility.[25]

15 ## IV.  CONCLUSION

16       Based on the foregoing discussion, Ladder Defendants' motions *in limine* at
17 dockets 84 and 86 are **DENIED IN PART AND GRANTED IN PART** as follows:

18       1) Weller is qualified as in expert in general ladder safety and his testimony
19 regarding Feuerstein's use of the AL-22 on the day of the accident and any safety
20 problems he observed about the AL-22 is admissible.  However, testimony about his
21 slip tests and the opinions derived from such tests are inadmissible.

22       2) Weller is not qualified as an expert in ladder labels and warnings.  His
23 opinions regarding the labels and warnings associated with the products in this case
24 are inadmissible.

---

[25] *See Primiano*, 598 F.3d at 564-65 (the focus of a Daubert examination "is not the correctness of the expert's conclusions but the soundness of his methodology").

3) Preston is qualified as in expert in general ladder safety, and his testimony regarding Feuerstein's use of the ladder on the day of the accident and any safety problems he observed about the ladder is admissible.

Trex's motion *in limine* to exclude the testimony of Jay Preston at docket 124 is **DENIED**, and its motion at docket 126 to exclude the testimony of Herbert Weller is **DENIED AS MOOT** given the court's ruling on the Ladder Defendants' motion at docket 84.

DATED this 6th day of June 2014.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE