1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9                **DISTRICT OF ARIZONA**
10

11  **Burt Feuerstein and Janet Shalwitz,**   )
12             **Plaintiffs,**                 )      **2:12-cv-01062 JWS**
                                               )
13        **vs.**                              )      **ORDER AND OPINION**
                                               )
14  **The Home Depot, U.S.A., Inc.,**          )
    **Gorilla Ladder Company, Tricam**         )
15  **Industries, Inc., Trex Company, Inc.,**  )
    **and A.B.C. Corp.,**                      )      **[Re: Motions at Docket 117, 119]**
16                                             )
             **Defendants.**                   )
17                                             )
18  _____        )

19                    **I.  MOTIONS PRESENTED**

20        At docket 117, Plaintiffs Burt Feuerstein ("Feuerstein") and Janet Shalwitz

21  (collectively "Plaintiffs") filed a motion *in limine* seeking to exclude the testimony of

22  Robert Tichy ("Tichy"), expert witness for defendant Trex Company, Inc. ("Trex"). The

23  memorandum and documents in support are at docket 118.  Trex responds at

24  docket 131.  Plaintiffs reply at docket 132.  At docket 119, Plaintiffs filed a motion *in*

25  *limine* seeking to exclude the testimony of Robert Duncan ("Duncan"), Trex's other

26  expert witness.  The memorandum and documents in support are at docket 120.  Trex

27  responds at docket 130.  Plaintiffs reply at docket 133. Oral argument was requested

28  for both motions, but would not be of additional assistance to the court.

## II.  BACKGROUND

The parties are familiar with the background of the accident in this case and the claims made by Plaintiffs against Trex and the other defendants.  A full recitation of the facts and claims is located in the court's order at docket 140.

Trex listed both Tichy and Duncan as expert witnesses.  Tichy is the expert hired to provide his expert opinion regarding the quality and slip resistance of Feuerstein's Trex decking.  Tichy, in turn, hired Duncan, who works as the laboratory manager for the Composite Material and Engineering Center, to conduct the slip resistance testing on Feuerstein's Trex decking.  Duncan conducted slip-resistance tests and prepared a report describing his methodology and results.  A copy of that report is at docket 120-1.  Tichey reviewed and interpreted Duncan's results and based his opinions regarding the deck's slip resistance on those results.  Tichy's expert rebuttal report, which discusses and interprets the results of Duncan's slip resistance tests, is at docket 118-2, and his expert report is in the record at docket 118-1.

Plaintiffs seek to exclude Duncan's testimony and any testimony derived from Duncan's tests results, including Tichy's testimony.  They argue that Duncan is not qualified to conduct slip resistance testing nor is he qualified to testify about the safety of Trex decking.  They also argue that his methodology was flawed, causing his data and any opinions derived from that data to be unreliable.  They also argue Tichy is not qualified to analyze the data from any slip-resistance test or give his opinion about the deck's slip-resistance.  In addition, they argue Tichy is not qualified to give his opinion about the lack of design or manufacturing defects in Feuerstein's Trex decking because he has no experience in Trex's manufacturing or design process and that he is not qualified to provide an opinion about Feuerstein's ladder set up on the day of the accident.

### III.  DISCUSSION

The court has broad discretion when ruling on motions *in limine*.[1]  Rule 702 permits opinion testimony by an expert as long as the witness is qualified and the witness's opinion is relevant and reliable.[2]  "[A] district court's inquiry into admissibility is a flexible one."[3]  The purpose of the district court's inquiry is "to screen the jury from unreliable nonsense opinions" and not to "exclude opinions merely because they are impeachable."[4]  The district court functions as a "gatekeeper, not a fact finder."[5]

Under Rule 702, a witness is "qualified as an expert by knowledge, skill, experience, training, or education."[6]  "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.  And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."[7]  The district court's task in screening a scientific opinion for reliability was addressed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[8] and its progeny.  "The court must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or

---

[1]*See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980) ("A district court is vested with broad discretion to make . . . evidentiary rulings conducive to the conduct of a fair and orderly trial.").

[2]Fed. R. Evid. 702.

[3]*City of Pomona v. SQM N. Am. Corp.*, Nos. 12-55147, 12-55193, 2014 WL 1724505, at *3 (9th Cir. May 2, 2014).

[4]*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).

[5]*Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (internal quotations omitted).

[6]Fed. R. Evid. 702.

[7]*Primiano*, 598 F.3d at 565 (internal quotations omitted).

[8]509 U.S. 579 (1993).

potential error rate, and general acceptance."[9]  However, these factors are "not

definitive, and the trial court has discretion to decide how to test an expert's reliability as

well as whether the testimony is reliable, based on the particular circumstances of the

particular case."[10]  If an expert does not "conduct his or her own research, independent

of the litigation, on the subject of the testimony, the district court must determine

whether there exists any 'objective, verifiable evidence that the testimony is based on

scientifically valid principles.'"[11]  When non-scientific testimony is at issue, the *"Daubert*

factors (peer review, publication, potential error rate, etc.) simply are not applicable

. . . ."[12]  The reliability of such non-scientific testimony depends more "on *the knowledge*

*and experience* of the expert, rather than the methodology or theory behind it."[13]

       "It is the proponent of the expert who has the burden of proving admissibility."[14]

Admissibility must be established by preponderance of the evidence.[15]  The party

presenting the expert has the burden to show that the expert's findings are based on

"sound science" and that the expert's methodology is capable of independent

validation.[16]

---

[9]*Pomona*, 2014 WL 1724505, at *3.

[10]*Primiano*, 598 F.3d at 564 (internal quotations omitted).

[11]*Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 605 (9th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317–18 (9th Cir.1995)).

[12]*Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (quoting *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2005)).

[13]*Id.* (quoting *Hankey*, 299 F.3d at 1069) (emphasis in original).

[14]*Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

[15]*Daubert*, 509 U.S. at 592 n.10.

[16]*Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995).

**A. Duncan's testimony**

Contrary to Plaintiffs' argument, Duncan is qualified to conduct slip-resistance testing.  Plaintiffs stress that unlike their expert, Jay Preston ("Preston"), Duncan does not possess certification to use the English XL Variable Incidence Tribometer ("VIT"), which is an instrument used to measure the slip-resistance of a material.  While such information may assist the jury in assigning weight to his testimony, it does not require exclusion of the testimony.[17]  The record demonstrates that Duncan is a laboratory manager for a center that specializes in composite materials, such as Trex decking.  His laboratory is accredited to use the VIT by the International Code Council Accreditation Services.  More importantly, he has over twelve years' experience in conducting slip resistence testing and has conducted thousands of such tests over his career.  Thus, Duncan is qualified to conduct slip-resistance testing with the VIT and may testify about the testing he conducted on Feuerstein's decking.  That is, he may explain his methodology and his results to the jury.

Plaintiffs also argue that Duncan is not qualified to offer an opinion about the safety of Trex decking.  Plaintiffs' argument is moot, as Duncan is not slated to do so.  Trex's disclosure statement indicates that Duncan will testify regarding the testing he conducted.  Indeed, Duncan concedes that he is not an expert in what constitutes a safe deck in terms of slip resistance and concedes he does not conduct qualitative analysis related to his test results.[18]  He did not come to any subjective opinions about the data obtained from his testing of Feuerstein's deck.[19]

---

[17]Trex indicates that Duncan will testify about the slip resistance testing he conducted on September 19, 2013.  Doc. 118-1 at p. 5; Doc. 120-1 at p. 5.  Trex does not plan to have Duncan testify about what those results mean or to have him provide an opinion on the safety of Feuerstein's decking.

[18]Doc. 130-1 at p. 39 (Duncan depo. at p. 38, ll. 19-24).

[19]Doc. 130-1 at p. 10 (Duncan depo. at p. 9, ll. 13-15).

1    Plaintiffs also seek to exclude Duncan's testing and any testimony related to

2    such testing because they assert his testing methods are unreliable.  They argue that

3    Duncan used an air compressor to provided pressure to the VIT instead of carbon

4    dioxide canisters.  There is nothing in the record to explain why this would cause his

5    results to be unreliable, and Duncan testified as to why his laboratory often makes such

6    a substitution.[20]  Moreover, Duncan ran the tests using *both* compressed gas and

7    carbon dioxide.[21]  Plaintiffs also argue that he failed to calibrate the VIT during his

8    testing, despite the fact that the VIT owner's manual states that calibration must be

9    performed during extensive testing.  Duncan calibrated the device prior to using it on

10   Feuerstein's deck.  While he did not calibrate it during the testing process, he calibrated

11   it after the testing was complete and verified that it was still reading correctly.[22]

12   Moreover, Duncan testified that while the VIT owner's manual requires calibration

13   during extensive testing, the standard testing method he applied — ASTM F1679-

14   04[23]—does not.[24]  Plaintiffs do not assert that the ASTM F1679-04 testing method is

15   inapplicable or unreliable.  Plaintiffs also argue that Duncan could not establish an

16   acceptable standard deviation for his testing.  However, Duncan testified that the

17   standard deviation is plus or minus .03 to .05 and that the results of his testing fell

18   within this range.[25]  Duncan's testimony is sufficient to persuade the court that his

19   methodology is reliable.  Any issue Plaintiffs may have with his methodology or his

20

21

22       [20]Doc. 130-1 at pp. 31 (Duncan depo. at pp. 30, ll. 10-11, 16-20).

23       [21]Doc. 120-1 at pp. 14-15.

24       [22]Doc. 130-1 at p. 17 (Duncan depo. at p. 16, ll. 8-18).

25       [23]ASTM F1679-04 is the standard test method for using a VIT.  Doc. 130-1 at p. 20
26   (Duncan depo. at p. 19, ll. 2-11).

27       [24]Doc. 130-1 at p. 16 (Duncan dep. at p. 15, ll. 23-25).

28       [25]Doc. 130-1 at p. 57 (Duncan depo. at p. 56, ll. 5-13).

1  calculation of the standard deviation goes to weight and can be addressed during cross
2  examination.

3  **B. Tichy's testimony**

4       Trex's disclosure statement indicates that Tichy "will opine on the condition of the
5  decking in question at the time of [Feuerstein's] fall, the design and manufacturing of
6  the materials used in the decking, and any modifications of the decking material made
7  after the material was purchased and installed at the residence of [Feuerstein]."[26]  It
8  also indicates that he will testify as to the slip resistance of the decking based on
9  Duncan's test.  Trex's rebuttal expert disclosure also indicates that Tichy will be a
10 rebuttal expert.  His rebuttal expert report critiques Preston's methodology and the
11 results Preston obtained.

12      Tichy is clearly qualified as an expert in Trex decking.  He has spent thirty years
13 studying and practicing in the areas of material science, wood science and technology,
14 and building products.  He can testify regarding the condition of Feuerstein's decking
15 and about the properties of Trex decking.  Plaintiffs argue that Tichy is not qualified to
16 discuss the design and manufacturing of Trex decking because he has not been
17 directly involved in its design or manufacture.  While these issue certainly go to the
18 weight of his testimony, he clearly has sufficient experience in testing and evaluating
19 Trex decking for code compliance.  He can provide testimony in line with this
20 experience.

21      Plaintiffs object to any testimony Tichy plans to give about the slip resistance of
22 Feuerstein's Trex decking.  They stress that Tichy did not perform his own testing and
23 therefore cannot be qualified to discuss the results of such tests.  However, the record
24 demonstrates that it is Tichy's practice to rely on and interpret data that technicians
25 gather in order to determine if a building product complies with the applicable codes.
26 Tichy is an engineer and knows how to interpret the coefficient of friction data obtained

27 _____

28      [26]Doc. 118-1 at p. 5.

-7-

1   during a slip resistance test.[27]  He also knows what is a typical coefficient of friction for

2   decking based on industry standards.[28]  That is to say, he is an expert in interpreting

3   data related to slip-resistance testing and can form opinions about the safety of a

4   product based on that data.  His education and experience qualifies him to derive

5   opinions from the results of Duncan's testing, as well as Preston's testing.[29]

6        As noted by the Plaintiffs, however, Tichy is not an expert in the testing

7   procedures. He does not actually perform slip-resistance testing, design slip-resistance

8   testing methods, or know how to use a VIT.[30]  He admits that Duncan is the expert on

9   operating the VIT and conducting the actual tests.[31]  So while he can discuss Preston's

10  results and provide his opinion about whether they are typical and whether he gathered

11  enough data, he cannot directly critique Preston's use of the VIT or whether he followed

12  the standard testing method for that instrument.

13       Plaintiffs also object to any testimony Tichy plans to provide about Feuerstein's

14  ladder and its set up on the day of the fall.  The court agrees that Tichy has not been

15  designated or established as an expert in ladder safety or ladder accident

16  reconstruction.[32]  Any opinions he has about the cause of Feuerstein's accident being

17  related to the ladder placement is deemed inadmissible.

18

19

20       [27]Doc. 131-1 at pp. 93-94 (Tichy depo. at p. 92, ll. 23-25; p. 93, ll. 1-12); Doc. 131-1 at
21  pp. 47-48 (Tichy depo. at p. 46, ll. 1-3; p. 47, ll. 5-16).

22       [28]Doc. 131-1 at p. 59 (Tichy depo. at p. 48, ll. 5-25); doc. 131-1 at p. 97 (Tichy depo. at
23  p. 96, ll. 16-19).

24       [29]Doc. 131-1 at p. 94 (Tichy depo. at p. 93, ll. 8-12).

25       [30]Doc. 131-1 at p. 29 (Tichy depo. at p. 28, ll. 7-8, 18); Doc. 131-1 at p. 30 (Tichy depo.
26  at p. 29, ll. 16-18); doc. 131-1 at p. 93 (Tichy depo. at p. 92, ll. 17-18).

27       [31]Doc. 131-1 at p. 69 (Tichy depo. at p. 68, l. 17).

28       [32]Tichy admits that he is not an expert on ladders.  Doc. 131-1 at p. 37 (Tichy depo. at
    p. 36, ll. 5-6).

-8-

1

## IV.  CONCLUSION

2      Based on the foregoing discussion, Plaintiffs' motions in limine at dockets 117

3 and 119 are **DENIED IN PART AND GRANTED IN PART** in accordance with the

4 court's discussion above.

5      DATED this 12th day of June 2014.

6

7                                        /s/  JOHN W. SEDWICK
                                 SENIOR UNITED STATES DISTRICT JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28