# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Burt Feuerstein and Janet Shalwitz, | |
| Plaintiffs, | 2:12-cv-01062 JWS |
| vs. | ORDER AND OPINION |
| The Home Depot, U.S.A., Inc., Gorilla Ladder Company, Tricam Industries, Inc., Trex Company, Inc., and A.B.C. Corp., | [Re: Motion at Docket 121] |
| Defendants. | |

## I.  MOTION PRESENTED

At docket 121, Plaintiffs Burt Feuerstein ("Feuerstein") and Janet Shalwitz (collectively "Plaintiffs") filed a motion *in limine* seeking to exclude the testimony of Jon Ver Halen ("Ver Halen"), expert witness for defendants The Home Depot, U.S.A., Inc. ("Home Depot") and Tricam Industries, Inc. ("Tricam"; collectively "Ladder Defendants"). The memorandum and documents in support are at docket 122. Ladder Defendants respond at docket 127. Plaintiffs reply at docket 134.   Oral argument was requested, but would not be of additional assistance to the court.

## II.  BACKGROUND

The parties are familiar with the background of the accident in this case and the claims made by Plaintiffs against the Ladder Defendants.  A full recitation of the facts and claims is located in the court's order at docket 140.

Ladder Defendants hired Ver Halen as an expert witness.  His expert report and professional qualifications are in the record at docket 122-1.  In his report, Ver Halen critiques the methodology and opinions of Plaintiffs' experts, explains the tests he conducted, and sets forth six concluding opinions regarding Feuerstein's ladder accident.[1]  Plaintiffs argue that some of Ver Halen's opinions should be deemed inadmissible.  First, Plaintiffs argue that Ver Halen is not qualified to offer opinions regarding the slip resistance of Feuerstein's decking or to critique the slip resistance test results obtained by their expert, Jay Preston ("Preston").  Second, they argue that Ver Halen cannot give his opinion about the placement and set up of Feuerstein's ladder on the day of the accident because his opinion is based on inaccurate and unreliable photographs.  Third, they argue that Ver Halen's test to demonstrate that the type of ladder used by Feuerstein, the Tricam AL-22 ("AL-22"), cannot "walk" is unreliable because Ver Halen lost the original video recording of him conducting the test.  Ver Halen had to repeat the test and create another recording.  Lastly, they argue that Ver Halen's opinions about the AL-22's compliance with the governing safety standards—ANSI A14.2— should be excluded because it is based on testing he did in 2002 with a different model of the AL-22.

---

[1] Doc. 122-1 at p. 13.

### III.  DISCUSSION

The court has broad discretion when ruling on motions *in limine*.[2]  Rule 702 permits opinion testimony by an expert as long as the witness is qualified and the witness's opinion is relevant and reliable.[3]  "[A] district court's inquiry into admissibility is a flexible one."[4]  The purpose of the district court's inquiry is "to screen the jury from unreliable nonsense opinions" and not to "exclude opinions merely because they are impeachable."[5]  The district court functions as a "gatekeeper, not a fact finder."[6]

Under Rule 702, a witness is "qualified as an expert by knowledge, skill, experience, training, or education."[7]  "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.  And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."[8]  The district court's task in screening a scientific opinion for reliability was addressed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[9] and its progeny.  "The court must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or

---

[2] *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980) ("A district court is vested with broad discretion to make . . . evidentiary rulings conducive to the conduct of a fair and orderly trial.").

[3] Fed. R. Evid. 702.

[4] *City of Pomona v. SQM N. Am. Corp.*, Nos. 12-55147, 12-55193, 2014 WL 1724505, at *3 (9th Cir. May 2, 2014).

[5] *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).

[6] *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (internal quotations omitted).

[7] Fed. R. Evid. 702.

[8] *Primiano*, 598 F.3d at 565 (internal quotations omitted).

[9] 509 U.S. 579 (1993).

potential error rate, and general acceptance."[10] However, these factors are "not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case."[11]  If an expert does not "conduct his or her own research, independent of the litigation, on the subject of the testimony, the district court must determine whether there exists any 'objective, verifiable evidence that the testimony is based on scientifically valid principles.'"[12]  When non-scientific testimony is at issue, the *"Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable . . . ."[13]  The reliability of such non-scientific testimony depends more "on *the knowledge and experience* of the expert, rather than the methodology or theory behind it."[14]

"It is the proponent of the expert who has the burden of proving admissibility."[15] Admissibility must be established by preponderance of the evidence.[16]  The party presenting the expert has the burden to show that the expert's findings are based on "sound science" and that the expert's methodology is capable of independent validation.[17]

---

[10]*Pomona*, 2014 WL 1724505, at *3.

[11]*Primiano*, 598 F.3d at 564 (internal quotations omitted).

[12]*Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 605 (9th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317–18 (9th Cir.1995)).

[13]*Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (quoting *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2005)).

[14]*Id.* (quoting *Hankey*, 299 F.3d at 1069) (emphasis in original).

[15]*Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

[16]*Daubert*, 509 U.S. at 592 n.10.

[17]*Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995).

**A. Ver Halen's opinions regarding slip resistance**

Plaintiffs argue that Ver Halen is not qualified to testify about the slip resistance of Feuerstein's Trex decking and thus cannot offer opinions about Preston's slip resistance testing. In their reply, Plaintiffs shift their argument and assert that his opinions are not reliable. Ver Halen's curriculum vitae indicates that he has an engineering degree and many years' experience as an engineer. He was a member of the ANSI committee that governs ladder safety. Thus, he is qualified to offer opinions about ladder accidents and ladder safety standards, including ladder slip resistance. Moreover, based on his report and his training as an engineer and his experience in accident reconstruction, the court concludes that Ver Halen is sufficiently qualified to offer his opinion about the data Preston obtained during his slip resistance testing. That is, he can comment about the scientific errors in Preston's analysis of the test data, discuss the variability of Preston's results, and offer his opinion on what could cause such a variance.

However, Ladder Defendants' response brief appears to expand the scope of Ver Halen's expert report and the opinions he plans to offer. They assert that Ver Halen not only criticized Preston's results, but also came to the conclusion that the "coefficient of friction" ("COF") created by the accident ladder's feet on the Trex decking was in fact sufficient to support Feuerstein on the ladder. While Ver Halen's report states that a COF of .25 would be needed "to resist the static loads of the user" generally, he does not state how he arrived at that number or whether Feuerstein's ladder provided the necessary COF of .25.[18] Ladder Defendants repeatedly refer to the fact that Ver Halen conducted his own tests to determine the COF of the accident ladder's feet on the Trex deck, but the record does not show that Ver Halen ran specific COF tests or conducted an analysis to determine the minimum COF needed to prevent a slip out. Ver Halen's report describes only two tests: a simple test climb of the ladder

---

[18]Doc. 122-1 at 10.

at the scene and then another simple test climb done with an exemplar ladder on Trex decking to disprove Plaintiffs' theory that the ladder could walk.

Ladder Defendants assert that Ver Halen concluded that the COF of the ladder's feet was adequate by "compar[ing] Preston's results with COF test results obtained as part of Trex's quality control, using the same [measuring instrument] employed by Preston on Feuerstein's deck."[19] But Defendants do not put forth any evidence to confirm that such a comparison was indeed the basis for Ver Halen's conclusion. Ver Halen's report does not discuss such a comparison, and Ladder Defendants did not submit deposition testimony or an affidavit from Ver Halen to support such an assertion. Ladder Defendants assert that Trex's COF tests results ranged from .58 – .68 (in comparison with Preston's range of .22 – .42), but Ladder Defendants do not provide the court with a copy of Trex's COF data for verification.

Ladder Defendants' brief also contains quotes from Ver Halen's deposition where he testifies about the adequate COF needed to safely hold Feuerstein on the ladder based upon his calculations, but that deposition testimony is not included as an exhibit. Furthermore, the deposition testimony quoted is conclusory in nature and does not sufficiently explain how Ver Halen calculated the COF or what his analysis entailed. Thus, Ladder Defendants have not put forth sufficient evidence to demonstrate that Ver Halen can reliably provide his own opinion about the adequacy of the ladder's slip resistance based on his COF calculations, which have not been sufficiently described to the court.

**B. Ver Halen's reliance on photographs**

Ver Halen's report concludes that one potential cause of the accident was the shallow angle of the ladder set up. He bases that conclusion on a photograph provided by Plaintiffs' counsel. Plaintiffs have subsequently disputed the accuracy and relevancy of the photograph. Feuerstein clarified in his deposition that the photograph is merely

---

[19]Doc. 127 at p. 3.

an approximation of where the ladder was set up and not evidence of the angle at which it was set.  While Feuerstein testified at his deposition that he had the angle set up properly at 75 degrees and not at the angle in the photograph, that statement is impeachable based on the existence of the photograph which Plaintiffs' provided to Ladder Defendants in discovery and based on Feuerstein's testimony that the photograph showed the approximate location of the ladder's feet.  So any opinions and conclusions Ver Halen may have drawn from the photo, while impeachable, are nonetheless admissible.  Ver Halen can provide testimony regarding the safety issues present in the event Feuerstein set up the ladder at the angle depicted in the photograph.

**C. Lost recording**

Ver Halen performed testing to test Plaintiffs' theory that Feuerstein's AL-22 "walked," causing it to slip out underneath Feuerstein.  Ver Halen set up the ladder at an appropriate angle on Feuerstein's Trex decking and tested it for stability and slippage.  His reports states that no walking or slippage occurred.  He also set up an exemplar ladder on Trex decking to determine if the ladder could walk when set up and used as it was on the day of the accident.  He positioned the ladder at 75 degrees and had a 210-pound user (the approximate weight of Feuerstein) climb up and down the ladder multiple times to test whether the ladder would shift weight between its feet and "walk."  According to the report, the ladder did not move.  The report indicates that a video was made of the "walking test," but Ver Halen was unable to locate a copy of the recording to bring to his deposition.  He then re-ran the test and created another recording.

Plaintiffs assert that any testimony regarding Ver Halen's "walking test" should be inadmissible because of the lost recording.  The court disagrees.  The basic test Ver Halen conducted to determine if the ladder could walk is described in his Rule 26 report.  While the original video footage was lost, he re-ran the same test and had it recorded.  'Ver Halen can discuss the results of the second test and the results can be

verified through the video. Any concern Plaintiffs have about the differences between the two tests or about the loss of the original data can be addressed during cross examination.

**D. ANSI standards**

Lastly, Plaintiffs assert that Ver Halen's opinion that the AL-22 meets the governing ANSI safety standard should be excluded. They base this argument on the fact that Ver Halen's own ANSI testing on the AL-22 ladder was done in 2002 on a different model of the AL-22. While Plaintiffs' point is well taken, the court concludes that this issue goes more to weight than admissibility. Moreover, Ver Halen's opinion is not based solely on his own testing. He also bases his opinion on the pre-purchase test report for the model of AL-22 that Feuerstein owns. Indeed, Plaintiffs do not dispute that the AL-22 passed pre-purchase testing for ANSI compliance.

## IV.  CONCLUSION

Based on the foregoing discussion, Plaintiffs' motion in limine at docket 121 is **DENIED IN PART AND GRANTED IN PART**.

Ver Halen may provide his opinion about the scientific errors in Preston's analysis of the test data, discuss the variability of Preston's results, and offer his opinion on the things that could cause such a variance. However, for the reasons discussed above, Ver Halen cannot testify that in his opinion the ladder's feet were adequately slip resistant based on his COF calculations. Ver Halen may otherwise testify as indicated in his Rule 26 report.

DATED this 12th day of June 2014.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE